UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

PAUL M. KAGE,

    Plaintiff,

        v.                                    CASE NO. 1:25-CV-410-HAB-ALT

RAEGAN, STEUBEN COUNTY SHERIFF,
TWO OTHER UNIDENTIFIED OFFICERS,

    Defendants.

## OPINION AND ORDER

Paul M. Kage, a prisoner without a lawyer, filed a complaint. (ECF 1). Under 28 U.S.C. § 1915A, the Court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Kage alleges he was falsely arrested sometime in February 2025 as he walked from a McDonald's restaurant to the Redwood Motel in Fremont, IN. Officer Raegan[1] from the Steuben County Sheriff's Office approached him and began questioning him. Kage told her, "I don't answer questions and I want[] a lawyer." (ECF 1, at 2). She then repeatedly asked, "Did you know Sabrina was here[?]" *Id*. Two other unidentified officers from the Steuben County Sheriff's Officer arrived and placed him in handcuffs. He was arrested for Invasion of Privacy. Kage posted bond, but his bond was later revoked. He's been incarcerated at the Allen County Jail since March 12, 2025. Kage claims there wasn't probable cause to arrest him because the defendants didn't speak with the victim prior to his arrest and because he didn't contact her on that day. He also takes issue with the fact that he was questioned by Officer Raegan after he asked for a lawyer. Kage has sued Officer Raegan, the Steuben County Sheriff, and "two other unidentified officers from Steuben Sheriff Office" for monetary damages. (*Id*., at 1, 4).

A review of the state court docket—which sheds additional light on the matter—shows Kage was charged with invasion of privacy, in violation of a no contact order, on February 24, 2025. *See State of Ind. v. Kage*, Cause no. 76D01-2502-CM-000441 (Steuben Sup. Ct. filed Feb. 4, 2025), available online at: https://public.courts.in.gov/mycase (last visited Apr. 22, 2026).[2] The probable cause affidavit related to his arrest states that on February 24, 2025, at approximately 1:27 A.M., Deputy Reagan Stevenson was sent to the Redwood Inn for a possible domestic battery situation after dispatch received a call from a complainant who "heard screaming coming from

---

[1] Kage sues her as "(Raegan) or Regan Officer from S.C.S.O. not sure of her first name." (ECF 1, at 1).

[2] The Court is permitted to take judicial notice of public documents in screening the complaint. *See* FED. R. EVID. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018); *Daniel v. Cook Cty*., 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts."); *Mosley v. Ind. Dep't of Corr.*, No. 22-2722, 2024 WL 1651902, at *2 (7th Cir. Apr. 17, 2024) ("Proceedings in state court are proper subjects of judicial notice.").

room 30" and "believed the fighting was between Pual (sic) Kage and Sabrina Furar." The caller said they saw a black vehicle leave the motel but didn't know if it was Kage or Furar. Dispatch advised Officer Stevenson that Kage and Furar had an active no contact order on file, with Furar listed as the protected party. Specifically, Kage was ordered to have no contact with Furar either in person, by telephone, or in any other way—including through an intermediary—and was prohibited from visiting any location where he knew Furar to be. The no contact order was issued as a condition of Kage's release from custody for his pending criminal confinement and domestic battery charges. *See generally* Ex. A.[3]

When Officer Stevenson arrived on the scene, she and Corporal Austin Batt went to room 30 and spoke with Furar who told them Kage hadn't been in the room. The officers left the motel but noticed a dark color Jeep Cherokee parked in the nearby McDonald's parking lot with a person wearing a black sweater inside. Because the business was closed, Officer Stevenson found this suspicious and approached the vehicle. She recognized the driver as Kage. She asked him about his welfare, and he said he was fine. There were no other individuals in the parking lot. Because Officer Stevenson believed Kage was trying to make contact with Furar, the officers left the McDonald's parking lot but stayed in the general area. *See generally* Ex. A.

From a different parking lot, Officer Stevenson saw a person walk from the McDonald's parking lot to the Redwood Inn at approximately 1:50 A.M. That individual originally approached room 30 but hid behind a tree when they saw the patrol car drive by. Officer Stevenson checked the Jeep Cherokee at the McDonald's parking lot and discovered it was unoccupied. She then saw the same individual walk around the motel to the front office. Officer Stevenson drove to the

---

[3] Because the probable cause affidavit is available online to Indiana attorneys but not readily available online to the public—in the spirit of N.D. Ind. L.R. 7-1(f)—the clerk will be directed to attach a copy of that filing to this order as Exhibit A.

Redwood Inn and found Kage and the motel's manager, Rachel Schultz, outside of the front office. As she approached, she heard Ms. Schultz say she had tried to knock on the door but "she didn't answer." Kage told Ms. Schultz to shut up and not answer any questions. Officer Stevenson tried to ask Kage if he knew Furar was at the hotel, but he refused to answer. *See generally* Ex. A.

Deputy Karson Meeks arrived on the scene, and he, Officer Stevenson, and Corporal Batt determined through speaking with Ms. Schultz that room 30 was in Kage's name and that both he and Furar lived there. At this point, Officer Stevenson placed Kage into custody for invasion of privacy in violation of the no contact order.  Later, Deputy Meeks obtained video footage from the Redwood Inn that showed "a tall individual in dark clothing leave room 30 and get into a vehicle matching the description of the black Jeep Cherokee." The time stamp of the video was 1:26 A.M., two minutes before Officer Stevenson arrived on the scene and first made contact with Furar. *See generally* Ex. A.

To prevail on a false arrest or false imprisonment claim brought pursuant to the Fourth Amendment, the plaintiff must show a lack of probable cause. *McBride v. Grice*, 576 F.3d 703, 706-07 (7th Cir. 2009); *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993). "Probable cause is an absolute defense to any claim under § 1983 for wrongful arrest or false imprisonment." *Bailey v. City of Chicago*, 779 F.3d 689, 694 (7th Cir. 2015); *see also Norris v. Serrato*, 761 Fed. Appx. 612, 615 (7th Cir. 2019) (the existence of probable cause precludes § 1983 claims "for an allegedly unreasonable seizure, whether a false arrest or a wrongful pretrial detention"). "Police officers have probable cause to arrest an individual when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006); *see also Young v. City of Chicago*, 987 F.3d 641, 644

(7th Cir. 2021) (Probable cause is a "common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred.") (quoting *Whitlock v. Brown*, 596 F. 3d 406, 411 (7th Cir. 2010)). "Probable cause requires 'only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Schenck*, 3 F.4th 943, 946 (7th Cir. 2021), *reh'g denied* (Aug. 13, 2021), *cert. denied*, 142 S. Ct. 818 (2022) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). It is "assessed objectively based on the conclusions that the arresting officer reasonably might have drawn from the information known to him." *Young*, 987 F.3d at 644 (quotation marks and citations omitted).

Here, Kage asserts he was arrested without probable cause. He was charged with invasion of privacy in violation of a no contact order pursuant to Ind. Code § 35-46-1-15.1(a)(5), which makes it a Class A criminal misdemeanor to knowingly or intentionally violate "a no contact order issued as a condition of pretrial release, including release on bail or personal recognizance, or pretrial diversion . . .." Based on the facts described above in conjunction with the probable cause affidavit, there was probable cause to arrest Kage for this crime: (1) the officers responded to a call from a complainant about screaming—whom the caller believed to be between Kage and Furar—in a specific motel room; (2) dispatch advised the officers that Kage was prohibited from contacting or being located near Furar in any way due to a no contact order issued as part of his pretrial release; (3) the officers noticed an individual parked suspiciously in a nearby parking lot and discovered it was Kage; (4) the officers subsequently observed an individual with dark clothing walk from that parking lot to the motel near the room in question; (5) the officers observed the individual walk to the front desk where they discovered Kage; (6) the officers questioned the manager and determined Kage's name was on the room where Kage and Furar both lived. Even

5

assuming, *arguendo,* the allegations in the complaint are true—that the officers didn't speak with Furar prior to arresting Kage and that Kage never contacted Furar on that day—those facts don't negate a finding of probable cause because a reasonably prudent person could have believed a crime had been committed based on the totality of the circumstances. *Young*, 987 F.3d at 644 (7th Cir. 2021) (probable cause is a "common-sense inquiry requiring only a probability of criminal activity"); *see also Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000) ("[S]o long as a reasonably credible witness or victim informs the police that someone has committed . . . a crime, the officers have probable cause to place the alleged culprit under arrest . . ..") (citation omitted); *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998) ("Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth that matters."). Moreover, a seizure is "reasonable under the Fourth Amendment when it is based upon probable cause regardless of the severity of the offense involved." *Woods*, 234 F.3d at 993 (recognizing even warrantless arrests for misdemeanors, where probable cause was based on a third party's complaint involving events that did not occur in the presence of the arresting officers, can comport with Fourth Amendment reasonableness standards). Therefore, Kage's false arrest claim will be dismissed.

Kage also alleges his constitutional rights were violated because Officer Reagan (Stevenson) continued to ask him questions during the investigatory stop after he told her he wanted a lawyer. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. "*Miranda* warnings and the corollary exclusionary rule are 'prophylactic measure[s] to prevent violations of the right protected by the text of the Self-Incrimination Clause—the admission into evidence in a criminal case of confessions obtained through coercive *custodial* questioning.'" *Johnson v. Winstead*, 900 F.3d

428, 434 (7th Cir. 2018) (emphasis added) (quoting *Chavez v. Martinez*, 538 U.S. 760, 772 (2003)). As such, failing to provide a *Miranda* warning prior to questioning isn't a Fifth Amendment violation by itself and can't form the basis of a civil rights action under 42 U.S.C. § 1983. *Id.* "Rather, a self-incrimination violation occurs (if at all) when a suspect's unlawfully obtained inculpatory statement is used against him in a criminal case." *Id.* (citing *Chavez*, 538 U.S. at 767). Here, Kage doesn't allege he was subjected to a custodial interrogation; rather, he was briefly questioned during an investigatory stop prior to his arrest. More importantly, he doesn't allege he provided any incriminating statements in response to Officer Raegan (Stevenson's) questions. In fact, he states he told her, "I don't answer questions." (ECF 1, at 2). This is consistent with the probable cause affidavit which indicates Kage "would not answer any questions." *See generally* Ex. A. The fact that Kage was questioned after asking for an attorney but refused to respond does not state a claim.

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "District courts, however, have broad discretion to deny leave to amend a complaint where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023); *see also Atkins*, 631 F.3d at 832 and *McCready*, 453 F.3d at 888 (plaintiff can plead himself out of court if he pleads facts that preclude relief). Such is the case here. For reasons already explained, no amount of re-pleading would enable Kage state a claim.

For these reasons, this case is DISMISSED pursuant to 28 U.S.C. § 1915A.

**SO ORDERED** on April 23, 2026.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT